Chief Judge Breitel.
These are direct appeals (NY Const, art VI, § 3, subd b, par [2]; CPLR 5601, subd [b], par 2) from judgments at Special Term, on summary judgment declaring section 14 of the New York State Financial Emergency Act for the City of New York (L 1975, chs 868, 869, 870) not violative of section 7 of article V of the State Constitution and therefore valid. Plaintiffs, who urge that section 14 was unconstitutional, are civil service employees’ organizations and their principal officers. Defendant is the State Comptroller and by statute law the trustee of certain employees’ retirement funds with which plaintiffs are concerned.
Under the statutes applicable to the employees’ retirement systems involved in these actions, since their inception and at the time of the adoption of the nonimpairment clause of the State Constitution (art V, § 7), the State Comptroller is the "trustee” of the retirement funds vested with discretion to invest in such securities as are authorized by statute (Retirement and Social Security Law, §§ 13, 313; State Finance Law, *511 §98). The statute under attack would, among other things, mandate the State Comptroller to purchase at face value bonds of the recently-created Municipal Assistance Corporation for the City of New York (MAC) in the amount of $125,000,000 from the retirement funds of the State Employees’ Retirement System and the State Policemen’s and Firemen’s Retirement System. To this extent the State Comptroller would be divested of discretion in determining how to invest funds under his charge.
MAC, a complicatedly designed, intermediate financing agency, is one of the executive and legislative responses to the dire financial condition of the City of New York, which has been found to be not only a threat to the welfare of the metropolis, but also to the State, if not indeed the Nation, of which it is a part. The governmental problem with which the executive and legislative branches have been deeply enmeshed in recent months is to make provision immediately for sources of funds to be available to MAC to stave off default by the city on its financial obligations, with unpredictable ramifications beyond the city.
The issue on these appeals is whether the legislative device of mandatory investment of retirement funds entrusted to the charge of the State Comptroller, despite the obviously compelling and urgent stringency with which the city and State are faced, violates the constitutional nonimpairment clause. The problem is novel and close precedents nonexistent. It is concluded that the legislative device is in violation of the nonimpairment clause, because the means designed to assure benefits to public employees and those already retired will be impaired by the offending device. Hence, the judgments must be modified to declare section 14 unconstitutional.
The Attorney-General, and MAC appearing as amicus curiae, urge that the nonimpairment clause (NY Const, art V, § 7) is limited to the "benefits” to which members and retired members of the retirement systems are entitled. This is literally true, as a reading of the clause makes plain: "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.” It is equally true, however, that necessarily implied in this constitutional, albeit perhaps limited, protection of the underlying "contract” providing for benefits is the protection of the sources of funds for those *512 benefits, whether by way of continuing contributions by employees, employers, or the reserve funds required to be maintained under the retirement plan. Although not essential to this conclusion is the salient fact that the reserve funds contain sums at some time paid regularly or specially by contributing employees. These employee-contributed funds, therefore, are not any longer State or municipal funds raised solely by the tax-levying power. Hence, assuming, as one should, that there has always been reserved by the Legislature (in light of the contemporaneous statutes in force when the constitutional amendment was adopted) flexibility to change the manner of paying contributions, to fund deficiencies in actuarial reserve, and to authorize the investment of the funds, a problem still occurs with respect to changes not falling within these categories. The same might be said about management of the funds: there is flexibility reserved to the Legislature, but it is not unlimited (cf. Brown v New York State Teachers Retirement System, 19 NY2d 779, affg on opn at App Div, 25 AD2d 344). Close examination is therefore required of any radical change in means chosen to maintain the integrity and security of the sources from which the concededly protected benefits are to be paid.
The persuasive contention by plaintiffs is that: however it might have been provided otherwise, and however it might be true that anyone might exercise his sound discretion unfortunately in the investment of the retirement funds, it is still true that, under the retirement plans, an independent, or at least a separate person is vested with discretion to make what he determines to be wise investments. To strip this person, in this instance the State Comptroller, an independently elected official it so happens, of his personal responsibility and commitment to his oath of office, is to remove a safeguard integral to the scheme of maintaining the security of the sources of benefits for over a half century. There is no quarrel, as indeed there could not be, with the exercise of legislative power to expand the kinds of investments he might make, including MAC securities (see State Finance Law, §§ 98, 98-a, as added by L 1975, chs 868, 870), or to restrict the classes of investments he might make from time to time (see Retirement and Social Security Law, §§ 13, 313, and its amendments from time to time). But it is nevertheless concluded that the Legislature is powerless in the face of the constitutional nonimpairment clause to mandate that he mindlessly invest in whatever *513 securities they direct, good, indifferent, or bad. The ultimate difference is between authority to invest and a mandatory direction to invest in certain securities, and in certain minimum amounts, whether or not the State Comptroller deems it advisable.
The comments last made have a special significance. They mean that neither plaintiffs nor the courts, simply because a constitutional provision is involved, are entitled in the present context to assess the market worthiness of securities in which the State Comptroller may invest. That discretion is his solely except as limited by the continuing power of the Legislature to expand or restrict the classes and kinds of investment in which he may place the funds in his care. It is not without significance, if not indeed particularly revealing, that the Legislature found it necessary to mandate the independent "trustee”, rather than to rely on his discretion.
On this analysis, it is immaterial whether the mandate is a small one, as Special Term reasons, and is addressed to what some might consider a miniscule proportion (1.6%) of the funds in the State Comptroller’s charge, or to a substantial part or all of the funds in his care. Moreover, it should be evident that if a little mandate is good, a slightly larger one would be good too, and then later, still a larger one would also be good. The resulting dissolution of principle by degree would be consummated.
Nor is it material to this analysis to accept plaintiffs’ argument that the State Comptroller is a trustee as that word is used in the context of private or even some public fiduciaries.
The issue as viewed by this court is a narrower one, and simpler to articulate, although one which places upon the court a heavy burden of decision because of the obvious implications for the city, the State, and undoubtedly for municipalities throughout the Nation.
In similar vein it is immaterial to consider whether the retirement benefits will be sufficiently protected by the assigned existing taxes to secure MAC bonds, or whether the benefits will be amply protected by the future tax levies of the State and its subdivisions. The fact is that the benefits are already protected by the tax-levying power (Retirement and Social Security Law, §§ 16, 316). What is involved is whether in any significant degree the additional security provided by reserve funds, even if some may believe they are not economi *514 cally or fiscally necessary, will be impaired by depriving the State Comptroller of freedom to exercise his independent judgment whether to invest in MAC bonds.
An issue raised by the court during the argument in probing the purpose of the reserve funds offers no escape from the conclusion it reaches. That issue was whether the purpose of the fund was to benefit not the members or retired members of the retirement systems, but to protect future taxpayers against burdens engendered by past generations of taxpayers in providing for retirement benefits of former public employees. Such legislative history, as has been made available by MAC, as amicus curiae, demonstrates what could have been inferred anyway. The purpose was twofold: to protect the receivers of benefits and to protect future taxpayers by use of actuarially sound retirement funds (NY Legis Doc, 1920, No. 92, Reports of Commission on Pensions, pp 58-61).
The duty of a neutral court is clear even when it be utterly understanding of the extraordinary and troubled efforts by the officials of New York City, the State administration and the Legislature. As this court said in Birnbaum v New York State Teachers Retirement System (5 NY2d 1, 11), in a context converse to that here but involving identical principles: "[The retirement system] argues that if this court [so] holds * * * the system will be plunged into bankruptcy. The answer to that argument must be that * * * we are not at liberty to hold otherwise”.
Indeed, it should be said that that is the primary role of the courts in the American system in reviewing the constitutional validity of executive and legislative acts even if they bear the guise, and the courts are convinced that the guise reflects a reality, of necessity, distress and emergency. The courts did not make the Constitution; the courts may not unmake the Constitution.
Accordingly, the judgments should be modified, without costs, to declare section 14 of the New York State Financial Emergency Act unconstitutional to the extent indicated as in violation of section 7 of article V of the State Constitution.