Chief Judge Breitel, (dissenting)
This appeal involves another of the fiscal gimmicks used during the State and municipal financial stringency in 1975. Like some of the other devices used at that time, this one too falls afoul of constitutional limitations (see Sgaglione v Levitt, 37 NY2d 507; Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y, 40 NY2d 731).
Section 87-c of the Workmen’s Compensation Law, as en *308 acted by chapter 893 of the Laws of 1975 and amended by chapters 6 and 32 of the Laws of 1976, assures State officers of indemnification, by the State, against "financial loss and expense arising out of or in connection with any claim, demand, suit, action, proceeding or judgment for alleged negligence, gross negligence, waste or breach of fiduciary duty” resulting from the statutory mandate of investment by the State Insurance Fund in new issue bonds of specified public corporations (subd 5, par a). This provision creates an impermissible "loan” of the State’s credit to those corporations (NY Const, art VII, § 8).
The State Insurance Fund accumulates assets from three separate sources: premiums for workmen’s compensation insurance, for disability insurance, and for medical and hospital malpractice insurance (Workmen’s Compensation Law, §76). The fund is applied to pay claimants’ benefits, and to pay dividends out of excess premiums to insureds.
The State Insurance Fund is, in effect, a trust fund for the benefit of claimants and the insureds, managed by a commission and empowered to invest surplus or reserve moneys, like private trust funds, in only those securities acceptable for investment by savings banks (Workmen’s Compensation Law, §§ 77, 87; Banking Law, § 235). The Commissioner of Taxation and Finance is the custodian of the fund (Workmen’s Compensation Law, § 85).
Prompted by the fiscal crisis of 1975, the Legislature added to the Workmen’s Compensation Law three provisions, facially similar, but critically different, purporting to compel "all state officers with responsibility for the custody or investment” of the fund to purchase new issue bonds of certain troubled public corporations and the City of Yonkers (Workmen’s Compensation Law, §§ 87-a, 87-b, 87-c). Section 87-a declared by legislative fiat that "obligations of the municipal assistance corporation for the city of New York are reasonable, prudent, proper and legal investments” for the fund, and directed the officials responsible to purchase MAC bonds according to a flexible schedule (subds 1, 2). The section also provided indemnification to these officials, from the fund itself, for "financial loss arising out of any claim, demand, suit, action or judgment for alleged negligence, waste or breach of fiduciary duty” by reason of investment of the fund money in MAC obligations (subd 3). Section 87-b, in nearly identical language, directed *309 purchase of obligations of the City of Yonkers in the amount of $15 million.
Since indemnification is out of the fund itself, and the State is not obligated to indemnify the State officers out of State funds, there is no loan of the State’s credit.
At issue in this case, however, is the third provision, section 87-c, which directed the purchase by the fund, according to a schedule subject to amendment, of $283 million of obligations of one or more of four specified public benefit corporations (subd 1). These obligations, too, were declared to be "reasonable, prudent, proper and legal investments” (subd 3). The indemnification provision, however, is significantly different. It provides State officers not only with indemnification by the fund, but with indemnification by the fund and the State "jointly and severally” (subd 5, par a). It is this provision that transforms the device into an impermissible violation of the State Constitution.
Of course, the indemnification provision is not, by itself, a creation of debt by the State (see NY Const, art VII, § 11). Involved instead is an ill-disguised loan of the State’s credit to public corporations, a loan prohibited by the State Constitution (art VII, § 8, subd 1). The constitutional issue under article VII was properly raised and the issue is one of extreme public importance (Cohen and Karger, Powers of the New York Court of Appeals, §§ 55,169).
The loan of the State’s credit is, in language, indirect. Nothing explicit is said about a loan of the State’s credit. The State Insurance Fund is required to purchase certain bonds. Simultaneously, State officers are indemnified against liability arising from claims challenging investment of fund moneys in the specified securities, such investment to be made with moneys obtained by the sale of United States Government securities in its portfolio (Workmen’s Compensation Law, § 87-c, subd 2).
The indirection in language, however, deviously disguises the economic effect of the statutory provision. That effect would not be more direct if the State were to issue its own bonds in place of those issued by the corporations. First, the State, by statutory mandate, ensures that the bonds of these then shaky public corporations will be purchased. Then, the indemnification provision assures that if there be claims for negligence, waste, or breach of fiduciary duty by State officers, the State will assume their liability. In ultimate effect, the *310 State has placed its guarantee, however indirect the manipulation, on the bonds of the public benefit corporations to be purchased by the State Insurance Fund. It has lent its credit into the future by way of guarantee, the very result prohibited by section 8 of article VII of the State Constitution.
Whether such claims or liabilities are likely to ensue is immaterial. What is material is that the State by its guarantee would extend its credit to "moral obligations” and thereby emburden future generations of taxpayers for future liabilities arising out of present public debts without compliance with constitutional requirements. Many have long looked askance at the proliferation of the State’s attachment of "moral obligation” to securities issued by separately created public corporations in order to avoid constitutional debt limitations and required referenda on the issuance of direct State debt obligations. This case presents a newer but only slightly different artifice.
The situation is quite different from that in Wein v City of New York (36 NY2d 610). In that case, as in an earlier case on which the court relied, there was no loan of the city’s credit, but rather what was characterized as an agreement to make a gift, not prohibited when made by a city to a public corporation (id., p 616; see NY Const, art VIII, § 1; Comereski v City of Elmira, 308 NY 248, 252). The city in no way, directly or indirectly, pledged its credit to a public corporation and no action would lie for failure of the city to appropriate money for the so-called "gift”. At least, so the court held.
By contrast, section 87-c explicitly provides that the State shall be liable to indemnify State officers against losses incurred through purchase of the corporate bonds. In two steps, the section adds to the limited financial security behind the bonds the credit of the State itself. First, by compelling State officers to buy the bonds, whether in truth sound investments or not, it exposes them to actions for negligence, waste, or breach of fiduciary duty. Second, by indemnifying the officers against such actions, it pledges the State’s credit, not only to reimburse the State officers, but, in effect, to make good on any losses suffered by the fund as a result of default by the public benefit corporations. Such losses would, by necessary implication, be measured in large part by the amounts in default, if any. This is, therefore, a loan of the State’s credit to a public corporation, and hence, should be declared unconstitutional. Nor is the infirmity measured by the likelihood of the guaran *311 tee ever being invoked. The State Constitution does not forbid only guarantees which may ripen into enforceability; it prohibits all guarantees of this sort.
The scheme challenged in this case was devised to meet a grave financial emergency. Of course, even emergencies do not justify suspension of constitutional limitations, expecially those designed to prevent or operate in emergencies (Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y, 40 NY2d 731, 739, 740, supra; Sgaglione v Levitt, 37 NY2d 507, 514, supra). That the State’s fiscal stringency and that of the public corporations has for the time being eased, at least to some degree, does not affect the result. The constitutional limitations are needed not for the days of governmental fiscal affluence, but for the days of distress often caused by a profligacy of the past to be suffered by generations which never enjoyed the profligacy now long gone.
The fiscal practices challenged in this case, if they should become precedent as they inevitably would, can only lead the State to future financial emergencies, and, perhaps, to disaster. The limitations of article VII were designed to avert just such temptations and such problems. Judicial yielding to such evasion of the constitutional protections is not acceptable constitutional law. For that matter it is not sound economics or good political philosophy, but that is not the judicial province.
Accordingly, I dissent and vote to reverse the order of Supreme Court and declare section 87-c of the Workmen’s Compensation Law invalid.
Judges Wachtler, Fuchsberg and Cooke concur with Judge Gabrielli; Judge Jones concurs in result in a separate opinion; Chief Judge Breitel dissents and votes to reverse in another opinion in which Judge Jasen concurs.
Judgment affirmed.