OPINION OF THE COURT
William P. McCooe, J.
Plaintiffs move and the defendants cross-move for summary judgment (CPLR 3212) in an action where plaintiffs seek (1) to enjoin the transfer of moneys from the State Insurance Fund (SIF) to the New York State (State) General Fund pursuant to recently enacted chapters 55 and 404 of the Laws of 1982 and (2) for a declaration that such statutes are unconstitutional with respect to such transfers.
Plaintiffs are policyholders of the defendant SIF and their standing rests on such status.
Defendants are the SIF and State officials charged by law with duties relative to the administration of SIF. SIF was created by Statute to provide workers’ compensation insurance on a competitive basis with private insurers and accepts policyholders who are rejected by private insurers.
THE CHALLENGED LEGISLATION
Chapter 55 of the Laws of 1982, the omnibus budget measure for State revenues during the 1982-1983 fiscal *180 year, amended the Workers’ Compensation Law by subdivision 2 of section 92 of the chapter mandating the transfer of $190 million from SIF to the general fund of the State of New York. The statute also provided for future transfers. Chapter 55 further provided in section 87-f of the Workers’ Compensation Law as implemented by an appropriations statute, chapter 404 of the Laws of 1982, in substance, a “dry appropriation” whereby $190 . million was appropriated and made available to the SIF only if its reserves were unable to meet claims of its policyholders. The appropriation was to be “deemed an admitted asset of the state Insurance Fund” (Workers’ Compensation Law, § 87-f, subd 2).
The transfers were to be effected on or before March 1, 1983 and expenditure of the appropriation, if any, is to be made no later than July 1 of the next fiscal year.
plaintiffs’ contentions
Constitutional violations, Federal and State, are the basis for the claimed unconstitutionality of the legislation. The arguments may be summarized as follows:
(1) The legislation which provides for the transfer of SIF assets constitutes an impairment of plaintiffs’ contractual obligations with SIF. Section 10 of article I of the United States Constitution prohibits the States from enacting any law impairing the obligations of contracts.
(2) The legislation takes private property of plaintiffs in their SIF policies and SIF assets without due process of law. This due process argument proceeds under the Fourteenth Amendment of the United States Constitution and section 6 of article I of the New York Constitution.
(3) The legislation which provides for the transfer of funds constitutes an unlawful intrusion upon the discretion of State officials. Section 3 of article V of the New York Constitution imposes limitations on the power of the legislative branch over the executive branch.
(4) The legislation, guaranteeing the solvency of SIF, constitutes a loan or gift of the State’s credit, which article VII (§ 8, subd 1) of the New York Constitution prohibits, except for certain educational or health purposes.
*181 (5) The legislation, which compels the rollover of an appropriation on a continuous basis, creates a debt of the State. Sections 9 and 11 of article VII of the New York Constitution prohibit such a practice.
(6) The legislation, which contains an implicit requirement that appropriated funds are to be expended, constitutes an unlawful appropriation scheme in violation of section 7 of article VII of the New York Constitution and section 40 (subd 2, par [a]; subd 3) of the State Finance Law.
(7) The legislation, insofar as interest is lost on the transferred funds, constitutes a loss to plaintiffs and higher premiums constituting a de facto tax. This practice violates section 22 of article III of the New York Constitution which specifies the procedures for the imposition of a tax.
Defendant SIF concurs with plaintiffs’ arguments and submits two additional arguments supporting the unconstitutionality claims of plaintiffs.
(1) The transferred funds constitute “fiduciary funds” as defined in section 70 (subd 1, par [g]) of the State Finance Law.
(2) Vested property rights are present in the Workers’ Compensation Law and SIF insurance.
defendants’ contentions (except sif)
The arguments may be summarized as follows:
(1) A strong presumption of constitutionality attaches to the legislation.
(2) There is no impairment of contract rights as constitutionally interpreted.
(3) Plaintiffs have not established property rights or a taking as constitutionally interpreted.
(4) The legislation comes within the legislative province and does not constitute either a debt of the State or a loan or gift of the State’s credit.
(5) The legislation does not constitute an unlawful appropriation scheme or de facto tax.
*182 DECISION

Summary

Defendants’ cross motion is granted and plaintiffs’ motion is denied. The plaintiffs have failed to overcome the strong presumption of constitutionality requisite to a finding of unconstitutionality of the legislation. They have failed to establish property rights or a “substantial impairment” of contract rights. The rationale underlying this ruling is the finding that based upon precedent and statutory interpretation, the State Insurance Fund is a State agency whose assets are not subject to the private property rights of plaintiffs. The money transfers are purely internal and not subject to the infirmities claimed. Impairment, even if present, of the policyholders’ contracts is incidental and prospective. Plaintiffs presuppose increases in premiums and guarantees of claimed rights as policyholders which are not supported by the Workers’ Compensation Law or any law, either statutory or decisional in this jurisdiction. There is no compulsion for plaintiffs to purchase insurance from SIF in the future and the effect, if any, of the transfer is prospective. A more detailed explanation of the holding follows this synthesis.
DETAILED DECISION
This court, in its role as a separate but equal partner in our democratic process, has a defined role in reviewing the actions of the legislative branch of government. This role is limited by the “simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt”. (Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y., 46 NY2d 358, 370; see, also, Cook v City of Binghamton, 48 NY2d 323.) Recognition of this standard necessarily precludes an examination by this court of the judgment exercised by the Legislature which should be debated in the legislative and public arenas where input by responsible groups strive to carry out public policy goals. Appreciating this role we now turn to the judicial role, namely, an examination of the legislation as to its constitutionality.
*183 The first argument raised by plaintiffs, that the legislation impairs their contractual obligations, is legally deficient as a matter of law. The “first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.” (Allied Structural Steel Co. v Spannaus, 438 US 234, 244.) Plaintiffs’ contention that they possess contractual rights such as to insurance premium rates and the disposition of reserves from the Workers’ Compensation Law and policies is not legally tenable. The language of both the policies and the Workers’ Compensation Law are devoid of any rights or guarantees impaired by this legislation.
Plaintiffs, to succeed on this motion, must first point to rights or guarantees in the policies or the Workers’ Compensation Law. The sections of the Workers’ Compensation Law relied upon by plaintiffs to establish these guarantees are not promises but simply expressions of legislative policy. This critical distinction has been expressed by the Court of Appeals. (Cook v City of Binghamton, supra; Pennsylvania R. R. Co. v State of New York, 11 NY2d 504.) The court in Cook at page 329 distinguished that case from Patterson v Carey (41 NY2d 714) where a specific prior pledge to bondholders permitting an authority to raise tolls was violated by the Legislature rescinding the toll increase. The Supreme Court has adopted the same rule of statutory construction. “[I]t is settled that, before a law may be deemed to amount to a contract between the State and a third party, the statutory language must be examined and found to be ‘plain and susceptible of no other reasonable construction’ than that a contract was intended. (Stanislaus County v. San Joaquin C. & I. Co., 192 U. S. 201, 208)” cited with approval in Pennsylvania R.R. Co. v State of New York (supra, p 511).
There is no promise in either the Workers’ Compensation Law or the insurance policies which has been shown to have been violated.
Assuming, arguendo, that plaintiffs establish the requisite promises, they would then have to prove a “substantial impairment” of the contract. (Allied Structural Steel Co. v Spannaus, supra.) Incidental effect on a contract is not equivalent to an impairment of contract in the constitu *184 tional sense. (Quirk v Municipal Assistance Corp. for City of N. Y., 41 NY2d 644; Withers v Teachers’ Retirement System of City of N.Y., 447 F Supp 1248, affd 595 F2d 1210; Tron v Condello, 427 F Supp 1175; Northwestern Nat. Life Ins. Co. v Tahoe Regional Planning Agency, 632 F2d 104.) Plaintiffs have not proven a “substantial impairment” or even an “incidental” effect upon their alleged contract rights. The claim that premium rates will increase is based on “hypothetical assumptions” based upon numerous variables. Similarly a decrease in dividends has not been established. SIF’s loss of interest on the transferred funds is not automatically translated into lower dividends and higher premiums. The affidavit of the Superintendent of Insurance affirms this fact. Lastly it is important to recognize that these claimed adverse consequences will not take place during the current policy period. Prospective losses under future policies are not within the protection of the impairment clause. Therefore plaintiffs have not proven the requisite “substantial impairment”. Plaintiffs’ reliance on decisions from other jurisdictions have no precedential value since they are based on dissimilar statutory language.
The second argument raised by plaintiffs is that the legislation effected a taking of property without due process of law. Plaintiffs claim a property interest in SIF assets and contractual rights to certain insurance rates and dividends. Plaintiffs must prove a right or interest in this property. The requisite showing is stated in Board of Regents v Roth (408 US 564, 577) where the court said:
“Certain attributes of ‘property’ interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined * * *
“Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that *185 stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.” (Emphasis supplied.)
Plaintiffs claim a property right in the assets of SIF contending that it is not a State agency and its assets are “fiduciary funds”. SIF is a State agency whose moneys are State moneys for which the State is liable and which give rise to no constitutionally protected property interest of plaintiffs. Among the characteristics of SIF leading to this conclusion are:
(a) The selection of directors by the Governor with the - advise and consent of the Senate (Workers’ Compensation Law, § 77);
(b) Legislative selection of State officials as treasurer and investment adviser (Workers’ Compensation Law, §§ 85, 87);
(c) Employee selection under civil service rules (Workers’ Compensation Law, § 82);
(d) Deposit of excess moneys as State funds (Workers’ Compensation Law, § 85);
(e) Legislative approved budget and expenditure preaudit by State Comptroller (Workers’ Compensation Law,
§ 88; L 1981, ch 1056; L 1982, ch 50), and
(f) Legislatively mandated investments (Workers’ Compensation Law, §§ 87-a — 87-c).
Decisional law has established that SIF fund moneys are State moneys. (Matter of State Ins. Fund v Boyland, 282 App Div 516, affd no opn 309 NY 1009, and Matter of Cahill v Tremaine, 245 App Div 773, affd no opn 269 NY 573.)
Reliance on section 70 of the State Finance Law to establish a property right in the assets of SIF is misplaced. This section, entitled Accounting, Financial Reporting and Budget Accountability Reform Act of 1981 (Reform Act) (L 1981, ch 405), created seven categories of State funds ranging from “general funds” to “fiduciary funds”. This law does not create any substantive rights in plaintiffs and its purpose is to establish guidelines for good accounting procedure. The section gives the State Comptroller the *186 power to “classify each fund, not classified by law” and provides for a reclassification procedure. There is no specification of SIF or any agency nor is there any showing that SIF has been “classified by law” in the Workers’ Compensation Law which defines its powers. Any classification given may be changed and any classification given, even by an officer of the State, does not establish a rule of law. The fact that a State official has classified it as a trust fund creates no property right in SIF or plaintiffs since the statute specifically provides for reclassification. Assuming, arguendo, that the funds are “fiduciary funds”, the beneficiaries are injured workers and not policyholders or employers. Furthermore the property is not being taken — it is being internally transferred within the State financial structure and a substitute fund is being legislatively created in lieu thereof. This is not a situation where a fund is being depleted which endangers the credit or financial stability of SIF. It is not a situation where there is a risk that injured claimants may lose benefits. What is present is a transfer of excess funds with an equal amount of money appropriated by the State as a contingency fund.
Plaintiffs alleged “entitlement” cannot rest on contractual rights since it has already been established that the plaintiffs have none, and the same reasoning of an “incidental” effect on the policyholders is applicable. (Tron v Condello, 427 F Supp 1175, supra; Withers v Teachers’ Retirement System of City of N. Y., 447 F Supp 1248, supra.) A mere diminution in value does not equate with a taking in a constitutional sense. (Andrus v Allard, 444 US 51.)
Plaintiffs and SIF have failed to establish a “legitimate claim of entitlement” to the property or a taking which rises to the limit of a constitutional deprivation.
The third argument of plaintiffs alleges legislative intrusion upon the discretionary powers of officers of the executive branch, relying on the general rule enunciated in Saxton v Carey (44 NY2d 545, 549) that each branch of government is to be free from interference by either of the other two branches. The powers of the Legislature over the executive branch are prescribed in section 3 of article V of the New York Constitution.
*187 Plaintiffs contend that the statute mandates a transfer of funds, a practice invalidated in Patterson v Carey (41 NY2d 714, supra) and Sgaglione v Levitt (37 NY2d 507). In Patterson the prohibited divesting of discretion of the Comptroller involved public benefit corporations, the supervision of whose accounts are not subject to legislative interference, rather than funds of a State agency such as SIF which may be regulated. Similarly in Sgaglione v Levitt (supra), the section 7 of article V issue involved employee retirement benefits rather than State agency funds presently under consideration. Section 18 of article I of the New York Constitution provided a broad scope of legislative power over the field of workers’ compensation that has received judicial approval. (Matter of Schmidt v Wolf Contr. Co., 269 App Div 201, affd 295 NY 748.) Aside from this express grant the scope of legislative power over the executive has been broad since the decision in Stanton v Board of Supervisors of County of Essex (191 NY 428, 432-433). Plaintiffs have not established that the enactment of chapter 55 of the Laws of 1982 exceeded the power of the Legislature.
Plaintiffs’ fourth argument is that the two statutes, chapters 55 and 404 of the Laws of 1982, violate article VII (§ 8, subd 1) of the New York Constitution which prohibits a loan or gift of the State’s credit. This contention is refuted by the language of subdivision 1 of section 8 itself which limits its application to aiding “any individual, or public or private corporation or association, or private undertaking”, a definition which does not extend to SIF, which is a State agency rather than a corporate entity. (Board of Supervisors of County of Cayuga v State of New York, 153 NY 279.)
Plaintiffs’ fifth argument urges that chapter 55 creates a debt from the State to SIF in violation of sections 9 and 11 of article VII of the New York Constitution, which refer to short-term and long-term debts, respectively. Plaintiffs describe the interplay in subdivision 2 of section 92 of chapter 55 which takes $190 million from SIF and the several parts of section 86 which establish an appropriation mechanism, require payment to SIF and deem any appropriation an admitted asset of SIF. Plaintiffs charac-. *188 terize this as a “debt” consisting of a rollover and a continuing device to assure the solvency of SIF. Reliance is placed on Newell v People ex rel. Phelps (7 NY 9) which involved canal revenue certificates and the creation of an unconstitutional appropriation by the State to pay interest on the same. Plaintiffs view the State as undertaking an obligation to repay in the future the $190 million transferred from SIF and rely upon Wein v State of New York (39 NY2d 136). Wein is distinguishable since it was a taxpayer’s action holding (p 140) that the prohibition against the giving or lending of the credit of the State to public corporations was not violated by the issuance of notes to fund reimbursable advances to New York City and MAC-NYC. Aside from the inapplicability of the Wein decision plaintiffs run afoul of the status of SIF as a State agency, hereinbefore discussed, which militates against the theory that a debt was created in favor of a separate entity, as occurred in Newell v People ex rel. Phelps (supra). The enactment of an appropriation by chapter 404 of the Laws of 1982 was simply a method to enable retransfer of moneys to SIF. Accordingly plaintiffs have failed to establish the creation of a debt.
Plaintiffs’ sixth argument is that an appropriation scheme prohibited by section 7 of article VII of the New York Constitution has been created insofar as it does not require expenditure of the appropriation within the two-year constitutional time limitation. Plaintiffs rely on Matter of County of Oneida v Berle (49 NY2d 515), which is distinguishable since that court held that executive impoundment of municipal sewage treatment funds was not necessitated by the Governor’s duty to balance the budget, which extended only to proposing one and not to maintaining it throughout the year. The present statutory scheme does not involve impoundment but instead provides for an expenditure within the two-year limitation measured from the time of appropriation as set out in section 7 of article VII.
The final argument of plaintiffs is that the transfer of $190 million from SIF resulted in a loss of investment income and a consequent de facto tax on employer-insureds in violation of section 22 of article III of the New York *189 Constitution, which requires a tax and its object to be distinctly stated. It is argued that employers are forced indirectly through higher premiums to contribute to the general fund of the State through a general revenue raising measure rather than a fee relating to a special benefit or service rendered. Apart from an absence of showing any increased premiums, the transfer of funds and consequent loss of interest income are not a tax since no forced contribution of plaintiffs is involved and since insurance coverage is available elsewhere. Even assuming, arguendo, that a tax is created it would be permissible as a special tax on one class of property rather than one falling “generally upon the entire property of the state” and “known at the time of the adoption of the Constitution”. (Matter of McPherson, 104 NY 306, 319.) Therefore for the reasons stated this argument has no validity.
CONCLUSION
The court denies plaintiffs’ motion for summary judgment and grants defendants’ cross motion for summary judgment declaring that the provisions of chapters 55 and 404 of the Laws of 1982 considered herein are constitutionally valid.