OPINION OF THE COURT
Thomas W. Keegan, J.
*646 H. Carl McCall, the Comptroller of the State of New York and the Trustee of the Common Retirement Fund for the public employee retirement systems, several members of the New York State and Local Employees’ Retirement System, the Police Conference of New York, Inc. and its President, Edward W. Guzdek, as well as several members of the Police and Fire Retirement System, move for summary judgment in these consolidated declaratory actions against the State of New York, Governor George E. Pataki and Budget Director Patricia A. Woodworth. Plaintiffs seek a declaration invalidating sections 13 and 16 of chapter 119 of the Laws of 1995 (1995 NY Senate-Assembly Bill S 5363, A 8082) on State and Federal constitutional grounds.
Defendants oppose the motions, and also move for summary judgment on the grounds that there are no triable issues of fact, and that plaintiffs’ causes of action lack merit.
To appreciate the issues fully, a brief repetition of the facts is in order. Chapter 119 of the Laws of 1995 (hereinafter chapter 119) was passed after intensive budget negotiations between the Governor and the legislative leaders. Throughout these negotiations, the Comptroller voiced his opposition to section 13 to the Governor and the leaders, and expressed his view that it was unconstitutional. The final version of the bill, which was passed without the knowledge of the Comptroller, provided a much needed increase in supplemental pension benefits to retirees, and also provided to State and local government employers a controversial $230 million "credit” to the Pension Accumulation Fund for the fiscal year 1995-1996.
The Pension Accumulation Fund is funded by contributions made by employee members, the State and participating local government employers. Following 69 years of the Aggregate Cost (AC) method of funding, chapter 210 of the Laws of 1990 changed the funding method to a Projected Unit Credit (PUC) method. In an attempt to deal with the budget crises being experienced by governmental entities, the PUC method suspended or greatly reduced employer contributions to the fund for a number of years. Chapter 210 was finally determined to be unconstitutional in 1993. (McDermott v Regan, 82 NY2d 354.) In that case, the Court of Appeals held that the PUC method violated "article V, § 7 of the New York State Constitution, requiring that a system member’s benefits not be 'diminished or impaired.’ ” (Supra, at 358.)
As a result of the holding in McDermott (supra) and in order to restore the pension fund to the Aggregate Cost method, the *647 Comptroller developed a formula to recapture contributions that would have been made under that method for the time that PUC was in effect. Based on this formula, State and local governments must pay $230 million this fiscal year. The controversial "credit” provided by section 13, which appears from the various documents produced in discovery and submitted to this court, to be yet another attempt to balance the State budget, permits the use of supplemental pension reserve monies to fund this obligation.
Sections 1 through 11 of chapter 119 provide supplemental retirement benefits for the first time to public employees who retired between 1983 and 1989, as well as pension increases for pre-1983 retirees.
Section 16 provides that if there is a successful court challenge to the constitutionality of section 13, the payment of supplemental benefits provided for in sections 1 through 11 will be delayed from September 1, 1995 to September 1, 1996. Even if a challenge to section 13 were ultimately unsuccessful, section 16 postpones payment of the supplemental pension benefits until at least 30 days after a final decision is rendered.
On July 5,1995, as expected by the defendants, the Comptroller and others commenced the underlying actions, and immediately sought injunctive relief. On August 9, 1995, this court preliminarily enjoined the effectiveness and enforcement of section 16, including any attempt by defendants to prevent or interfere with payment of the supplemental retirement allowances commencing on September 1, 1995.
In an opinion and order dated October 26, 1995, this court’s order granting injunctive relief was reversed by the Appellate Division, Third Department, "[b]ecause plaintiffs [had] not shown that denial of their request will cause them to suffer any injury which is not compensable by money damages”. (McCall v State of New York, 215 AD2d 1, 5.)
Be that as it may, this court continues to believe that section 16 violates the Nonimpairment Clause of the New York State Constitution, by limiting the Comptroller’s ability to act in a manner consistent with the exercise of his duties as a trustee of the pension fund by conditioning the payment of the supplemental benefits on his forbearance from bringing suit. (See, Sgaglione v Levitt, 37 NY2d 507, 514; see also, NY Const, art V, § 7.)
Although, as stated by the Appellate Division, section 16 does not directly prevent the plaintiffs from bringing suit, there *648 is no denying that it penalizes them for doing so. The "Hobson’s choice” it presents impairs the Comptroller’s freedom to exercise his independent judgment to bring suit to protect both the pension fund assets and the beneficiaries of that fund, and the freedom of private citizens to test the validity of legislation that so clearly affects their vested interests. (See, McCoy v Goldin, 598 F Supp 310.)
Defendants’ contention that section 16 was enacted to allow the Legislature to "rethink” the supplemental retirement allowances and their funding sources, shows only that it anticipated problems with its hand in the cookie jar and, given that payment of allowances is delayed even if section 13 is upheld, provides no rational connection between the increase in those allowances and the commencement of this litigation. (See, Dolan v City of Tigard, 512 US 374, 389-391.)
Although not previously addressed, this court believes that section 16 impermissibly delegates legislative power to these private citizens, by permitting any one of the 860,000 current or retired employees covered by the Retirement Systems to determine, by bringing suit, when the increase in supplemental benefits begins. While section 16 artfully attempts to implement the Governor’s, his budgetary staff’s, and/or the Legislature’s policymaking choices, desired effective date of September 1996, and budget-balancing scheme for the 1995-1996 fiscal year, it painfully and impermissibly leaves those choices to others. (See, e.g., Matter of Citizens For An Orderly Energy Policy v Cuomo, 78 NY2d 398, 410.)
Before turning to the constitutionality of section 13 of chapter 119, a brief look at its legislative history and 1995’s budget negotiations is in order. On February 1, 1995, after vetoing an earlier pension supplementation bill passed by the Legislature, Governor Pataki submitted, along with his budget, a budget bill directing the Comptroller to use monies in the Supplemental Reserve Fund as a "credit” towards State and local government pension obligations due for the fiscal year 1995-1996 "arising from a judgment regarding the constitutionality of certain sections of Chapter 210 of the laws of 1990”.
The amount of the proposed credit (1.5% of the salary of State and local governments during fiscal year 1995-1996) equaled the $230 million due under the Comptroller’s 1993 plan to implement the McDermott judgment.
In response to the Comptroller’s objection to this first bill, the Governor proposed an amended version which deleted the *649 explicit reference to the McDermott judgment and substituted a $230 million credit for the 1.5% formula.
Tellingly, while both versions targeted the Supplemental Reserve Fund, neither version provided for an increase in supplemental benefit allowances. It appears from the documents submitted that the "link” between the proposed use of the Supplemental Reserve Fund for 1995-1996 budget relief and pension supplementation was provided by the Legislature. Not surprisingly, the Legislature and its staff anticipated a problem with the "credit” and felt that linking the use of the Supplemental Reserve Fund to the supplementation of benefits would aid the passage of the bill, and make a challenge by the unions and Comptroller less likely.
While mindful of the severe budgetary constraints that face the administration and the Legislature, the court cannot ignore the fact that the instant dilemma (i.e., obligation) is a result of an earlier attempt to ease the State’s budgetary problems by enacting a similar funding scheme based on credits to be taken against earlier employer contributions, or so-called surplus funds (McDermott v Regan, supra, 82 NY2d, at 359), and the Comptroller’s remedial five-year plan to recapture the contributions credited.
Defendants, however, argue that section 13 does not run afoul of the Court of Appeals holding in McDermott (supra) because section 13, unlike chapter 210 of the Laws of 1990, has no impact on the funding of constitutionally protected fixed pension benefits. They argue that, unlike fixed pension benefits which are protected by article V, § 7 of the New York State Constitution, supplemental retirement allowances are not entitled to protection under the Nonimpairment Clause for the simple reason that they are not part of any public employee’s retirement membership contract. They claim that supplemental retirement allowances are provided "entirely as a matter of legislative grace” to retirees whose membership in the Retirement System has ceased (Retirement and Social Security Law § 40 [f| [3]); thus, they cannot be considered a constitutionally protected benefit, nor can the Supplemental Reserve Fund be considered the source of constitutionally protected benefits.
Defendants also contend that the reauthorization of supplementation on a temporary, nonautomatic basis by the Legislature reflects an intent that supplementation not be subject to the protections afforded by article V, § 7 of the State Constitution. Finally, defendants claim that "the Legislature is free to change course and direct that [the Supplemental Reserve Fund] *650 be applied to a different use” because the permanent program of supplementation the Supplemental Reserve Fund was created to fund was never enacted.
Critical to defendants’ position is their assertion that the Supplemental Reserve Fund is a "discrete” fund made up entirely of public employers’ contributions, separate and distinct from the Pension Accumulation Fund. And on this faulty premise, rests their house of cards.
First and foremost, the court notes that under section 78 (e) and section 378 (e) of the Retirement and Social Security Law, all monies contributed for supplemental retirement allowances are to be placed in the general "constitutionally protected” Pension Accumulation Fund.
Second, after reviewing the various affidavits and financial reports submitted, the court is convinced that the monies in the Supplemental Reserve Fund (1) consist of employer contributions and earnings thereon, (2) exist only on "actuarial paper” and (3) have always and only been considered an asset of the Pension Accumulation Fund.
Third, as Teri E. Landin, present Actuary for the Retirement Systems, has made clear, it is simply not true that the Supplemental Reserve Fund has remained "unused”. Unquestionably, the Supplemental Reserve Fund has been used both as security for existing allowances and for future allowances, and as Ms. Landin states, to "pay” out supplemental allowances over the course of a fiscal year by debiting the actuarial ledger for payments which often precede contributions by many months.
Fourth, it appears that what was considered by the Legislature to be temporary were increases in the supplementation of benefits that would be automatically linked to the Consumer Price Index. As the plaintiffs argue, the fact that no permanent system of automatic increases was adopted in no way effects the permanency of supplemental allowances once enacted.
Fifth, no distinction is made by the Court of Appeals in Sgaglione (37 NY2d 507, supra) or McDermott (82 NY2d 354, supra) between funds held in reserve for fixed pension benefits or supplemental retirement allowances. Nor are their holdings limited to the protection of fixed pension benefits and the sources thereof.
The Court, in Sgaglione (supra) and McDermott (supra), defined, without limitation, the "benefits of membership” in the New York State Retirement Systems to include the funds *651 in the system itself, the sources of those funds and the independent discretion of the Comptroller, all of which have been diminished or impaired by the passage of section 13.
The "credit” proposed by section 13 will result in a $230 million diminution in the total employers’ contribution for the 1995-1996 fiscal year, the exact sum they were required to pay back under a plan formulated by the Comptroller to implement the McDermott judgment and restore the Pension Accumulation Fund to the Aggregate Cost method. Obviously, if public employers are allowed this "credit”, the remaining funds in the Supplemental Reserve Fund will be depleted sooner, the return on investment of funds significantly decreased and the additional security provided by the supplemental reserve monies will be impaired. (McDermott v Regan, supra, 82 NY2d, at 363.)
And, as plaintiffs argue, if the Legislature can pass a law devising a "credit” against an amount the Comptroller determines to be due, then it is divesting the Comptroller of his independent and autonomous discretion and judgment to manage the retirement fund and to protect the interests of its members. (See, Sgaglione v Levitt, supra, 37 NY2d, at 512-514; McDermott v Regan, supra, 82 NY2d, at 360.)
As a final matter, this court does not believe that a finding of unconstitutionality in regard to sections 13 and 16 invalidates the remaining portions of chapter 119.
Section 16 anticipates the unconstitutionality of section 13, and could, but does not dictate that a judgment declaring section 13 unconstitutional would invalidate .sections 1 through 12. Indeed, documents submitted by the plaintiffs demonstrate that the Legislature specifically considered and rejected "antiseverability” clauses in chapter 119 in its final and earlier versions.
Contrary to defendants’ contention, it is the legislative history of chapter 119 that convinces this court that the remaining portions of chapter 119 are properly severable from the unconstitutional provisions of sections 13 and 16. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [d].)
There was no connection between the use of the Supplemental Reserve Fund and pension supplementation until the Executive Department and Legislature, fully cognizant of the legal risks involved in their latest budget-balancing ploy, "linked” the two in order to encourage the passage of chapter 119.
Once again, it’s time to bell the cat.
*652 Accordingly, the motions of plaintiffs for summary judgment declaring that sections 13 and 16 of chapter 119 of the Laws of 1995 are void and unconstitutional and declaring that the supplemental retirement allowances provided for in sections 1 through 11 of that chapter shall be payable on September 1, 1995 are granted.