Robert McCOY, Wilfredo Rios, Anthony Anzola, John Oliva, Alvin Solomon, Harvey Marshall, Rudolph Marano, Donald R. Stanton, Manny Savidis, Richard Ingraldi, Edward H. Knippenberg, Paul Rosenstein, Robin Salvatore, John F. Sand, Arnold Schoenbrun, John Young, Wallace Wiggins, William Whippet, and Robert O'Brien, Plaintiffs,

v.

Harrison J. GOLDIN, individually and as Comptroller of the City of New York, Robert Linn, individually and as past General Counsel for the Office of Labor of the City of New York, and as present Director of Labor Relations of the City of New York, and the City of New York, Defendants.

No. 82 Civ. 3376 (DNE).

United States District Court, S.D. New York.

Dec. 3, 1984.

Carol Mellor, New York City, for plaintiffs.

Fredrick A.O. Schwarz, Jr., Corp. Counsel, Stephen P. Kramer and Caryn Hirshleifer, Asst. Corp. Counsels, New York City, for defendants.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

### PROCEDURAL BACKGROUND [1]

This civil rights suit was originally commenced by twenty-one radio repair mechanics against their employer, New York City ("City")[2]; its Comptroller, Harrison J. Goldin; its Director of Labor Relations, Bruce McIver; their union, District Council 37, American Federation of State and City Municipal Employees ("the Union"), and its President, Joseph Zurlo. The municipal defendants counterclaimed to recover amounts allegedly overpaid to plaintiffs. Defendants moved to dismiss the complaint for failure to state a claim. Their motion was denied in a Report and Recommendation dated October 7, 1983 which was adopted by this Court. *Stevens v. Goldin,*

No. 82 Civ. 3376 (S.D.N.Y. Jan. 20, 1984). Pursuant to leave granted in that decision, plaintiffs took limited discovery. The parties then stipulated to discontinue the action with respect to defendants Joseph Zurlo and the Union.

On July 13, 1984, defendants moved for summary judgment on the ground that as a matter of law, plaintiffs have failed to show that defendants are liable under 42 U.S.C. § 1983. Plaintiffs have cross-moved for partial summary judgment on the issue of liability. The parties agreed by stipulation entered into on July 27, 1984, to discontinue the separate action they had commenced against Robert Linn and the City of New York, *Stevens v. Linn,* No. 84 Civ. 3079 (LBS), and to amend the complaint in the instant action to add Robert Linn as a defendant. As part of the stipulation, defendant Bruce McIver was dropped as a defendant. On October 26, 1984, Magistrate Naomi Reice Buchwald issued a Report and Recommendation on the motions for summary judgment. The municipal defendants filed objections to the magistrate's report. Plaintiffs filed a memorandum in opposition to the defendants' objections.

### FACTS

This litigation arises out of a seven year wage dispute between the City and its radio repair mechanics. The parties' Rule 3(g) statements and motion papers agree on the following relevant and material facts. There being no genuine disputed issue of fact, the liability issue in this case may be resolved on a motion for summary judgment.

*Statutory Background*

Plaintiffs are radio repair mechanics who have been employed by various agencies of

---

1. The Procedural Background and Fact sections are adapted from a Report and Recommendation issued by Magistrate Naomi Reice Buchwald on October 26, 1984 and are to that extent adopted. There is extensive reliance on and quotation of the Magistrate's thorough report throughout this opinion, however, no specific citations are made.

2. At present there are nineteen plaintiffs. By stipulation dated November 5, 1982, Wendell Stevens, Donald Conlin and Charles Cornetta withdrew as plaintiffs. By stipulation dated July 27, 1984, Robert O'Brien was added as a party plaintiff.

the City. They belong to a group of municipal workers known as "Section 220" employees, who have the option of having their wages and benefits established pursuant to New York State Labor Law § 220, rather than through individual wage agreements or collective bargaining. Plaintiffs are represented by District Council 37, A.F.S.C.M.E., AFL–CIO, the Union.

Labor Law § 220 provides that covered employees' wages "shall be not less than the prevailing rate of wages" and their benefits "shall be in accordance with prevailing practices" in the same trade in the same locality. New York Labor Law § 220(3) (McKinney Supp.1982). An employee or his union disagreeing with the City's judgment as to whether his wages and benefits conform to the mandate of Section 220 may file an administrative complaint with the City Comptroller requesting the Comptroller to determine whether he is being paid according to the prevailing rate and practice. *Id.* § 220(5)(e), (7).

After a Section 220 complaint is filed, the City and Section 220 employees, through their union, may negotiate wages and benefits and enter into a formal consent agreement known as a "compromise determination," which embodies the terms of a wage settlement. The compromise determination is then ratified by the Comptroller and has binding force and effect under the Labor Law. Individual employees, however, are traditionally granted the right to reject the terms of a compromise determination by filing a notice with the Comptroller within thirty days of issuance.

Employees or their union who reject a proposed compromise determination may pursue the procedures set forth in Labor Law § 220. Pursuant to these procedures, the Comptroller conducts an investigation and hearing to determine the prevailing wage rate and practice. New York Labor Law § 220(5)(e), (7), (8). The Comptroller's determination is then subject to judicial review in an Article 78 proceeding. *Id.* § 220(8).

*The Instant Controversy*

The genesis of this action is a dispute over the prevailing rate of wages for radio repair mechanics during the years 1976 to 1978. Before January 1976, the City paid its radio repair mechanics at a base rate of $9.32 per hour, pursuant to a compromise determination. In July 1976, all of the City's radio repair mechanics, including plaintiffs, filed complaints pursuant to Section 220 of the Labor Law demanding that the Comptroller determine the prevailing rate of wages for the period of 1976–1978. In August 1978, pursuant to a compromise determination between the City and the Union, the City offered the radio repair mechanics a base rate of $9.60 per hour for the period of January 1, 1976 through June 30, 1978. The plaintiffs rejected the terms of this compromise determination and elected to pursue their statutory remedies with the City. In September 1980, following an investigation and hearings, the Comptroller found that the prevailing rate of wages was $7.61 per hour as of January 1976, $8.28 per hour as of January 1, 1977, and $9.00 per hour as of January 1, 1978. These rates were less than the rate of wages the City had agreed to pay acceptors of the compromise determination that plaintiffs had rejected. The rate was also less than the actual rate of wages which the City had been paying to those who litigated. The plaintiffs challenged the Comptroller's September 1980 determination in an Article 78 proceeding, *Goldman v. Goldin*, 81 A.D.2d 1043, 439 N.Y.S.2d 224 (1st Dep't 1981), *appeal denied*, 54 N.Y.2d 608, 427 N.E.2d 951, 443 N.Y.S.2d 130 (1981), which was finally resolved against them.

Thereafter, in April 1982, the City presented a proposed individual wage agreement to radio repair mechanics covering the period 1978–1982. The proposed agreement provided, *inter alia*, that on execution of the agreement by either acceptors or rejectors of the compromise determination of August 1978, that the radio repair mechanics would be entitled to receive the following wage rates:

| Period | Hourly Rate | Saturday, Sunday and Holiday Rate |
|--------|-------------|-----------------------------------|
| 07/1/78 – 9/30/78 | $ 9.60 | $14.40 |
| 10/1/78 – 6/30/78 | 9.98 | 14.97 |
| 07/1/79 – 9/30/79 | 10.19 | 15.285 |
| 10/1/79 – 6/30/80 | 10.60 | 15.90 |
| 07/1/80 – 6/30/81 | 11.45 | 17.175 |
| 07/1/81 – 6/30/82 | 12.37 | 18.555 |
| 07/1/82 – | 12.727 | 19.09 |

Employees who signed the agreement would be entitled to additional wages reflecting nonpensionable cash payments, cost of living adjustments, and other increases.

Moreover, as the above table indicates, all signatories to the proposed agreement would be entitled to substantial back pay for the 1978–1982 period. The City linked a recoupment condition to this back pay entitlement. The recoupment provision required rejectors of the 1976–1978 compromise determination, the plaintiffs, to allow the City to deduct from the 1978–1982 back pay the difference between the amount they actually received during 1976–1978 and the amount determined by the Comptroller to be the prevailing rate for that period.

Most significantly for plaintiffs' claim, the agreement further stipulated that signatories would waive all rights to litigate or file complaints with the Comptroller about, or otherwise challenge, the terms of the proposal. These waivers and releases applied to the 1976–1978 period for which the City was claiming the right to recoup, as well as the 1978–1982 period.

Defendant Robert Linn, then General Counsel of the New York City Office of Municipal Labor Relations, originated the idea of requiring recoupment and waiver of all rights to litigate or file complaints with the Comptroller on all issues covering the period of 1976–1982. His stated purpose was to "wrap up" the wage agreement for the entire period and preclude further litigation. *See* March 2, 1984 Deposition of Robert Linn at 26, Exhibit 6 to Defendant's Memorandum of Law in Support of their Motion for Summary Judgment [hereinafter cited as "Linn Deposition"].

Plaintiffs rejected the April 1982 proposal. As a result, their pay was maintained at $9.32 per hour, as it had been throughout the six-year dispute.[3]

Plaintiffs' motion for summary judgment asserts that the waiver and recoupment provisions of the April 1982 wage agreement proposal infringed their constitutional right of access to the courts and their right to equal protection. Defendants' motion contends that plaintiffs have failed to adduce any evidence to support a claim of retaliation or denial of equal protection or to demonstrate that defendants are not entitled to recoupment.

## DISCUSSION

### *Right of Access to the Courts*

Defendants' position is that they are entitled to summary judgment because plaintiffs have failed to demonstrate that the inclusion of a recoupment provision in the 1978–1982 compromise determination amounts to a retaliation or that defendants are not entitled to recoupment. Defendants' theory is that in order to prevail on a claim of due process based on the right of access to the courts, plaintiffs must prove that the City has threatened to withhold monies to which they are legally entitled solely because they have threatened to or have brought litigation against the City. Defendants reason that because plaintiffs are not legally entitled to the wages offered in the April 1982 proposal for the years 1978–1982, plaintiffs' due process claim must fail.

■■■ The Court agrees with the Magistrate and rejects defendants' argument. The right of access to the courts and the right to petition the government with grievances find their source in the first amendment's free speech and right to petition clauses, *In re Primus*, 436 U.S. 412, 426,

---

**3.** During the pendency of this litigation, a new compromise determination was entered into on July 11, 1983, for the period of July 1982 through June 1984. Pursuant to that determination, plaintiffs are currently being paid at the same rate as other radio repair mechanics.

98 S.Ct. 1893, 1901, 56 L.Ed.2d 417 (1978), as well as the due process clauses of the fifth and fourteenth amendments, *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). Contrary to defendants' assertion, plaintiff need not prove that plaintiffs had a right to the 1978–1982 wage rates or back pay set forth in the April 1982 wage agreement in order to claim that their right to access was unduly burdened. "[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ...." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Thus, the fact that plaintiffs were not "entitled to the benefits does not in and of itself defeat their constitutional claim. *See Northern Pennsylvania Legal Svcs., Inc. v. County of Lackawana,* 513 F.Supp. 678 (M.D.Pa. 1981).[4]

■ Magistrate Buchwald relies on *Silver v. Cormier,* 529 F.2d 161 (10th Cir. 1976) and *Northern Pennsylvania Legal Services, Inc. v. County of Lackawana,* 513 F.Supp. 678 (M.D.Pa.1981), to support a

finding that by making the acceptance of the recoupment provision for the 1976–1978 period a precondition to plaintiffs benefitting from the wage agreement covering 1978–1982, defendants infringed on plaintiffs' right to seek redress and resolution of the recoupment issue through the courts.[5] It is clear that defendants intended to prevent further litigation regarding the wage dispute. Linn Deposition at 25–26. The court finds the Magistrate's reasoning persuasive. Therefore, that portion of the Magistrate's Report and Recommendation concerning the violation of the plaintiff's right of access to the courts is adopted.

### Action versus Defendant Linn

■ The Magistrate recommends that the action against defendant Linn be dismissed based on a qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The court agrees. Defendant Linn's conduct was reasonable and he should therefore enjoy a qualified immunity. *Davis v. Scherer,* —— U.S. ——, —— – ——, 104 S.Ct. 3012, 3018–20, 82 L.Ed.2d 139 (1984). The Magistrate's Report and Recommendation with respect to the qualified immunity of defendant Linn is therefore adopted.[6]

---

**4.** In their objection to the Magistrate's Report and Recommendation, defendants contend that plaintiffs' right to access to the courts extends only to matters of public concern and that the dispute between the plaintiffs and the City is not a matter of public concern. Defendants rely on *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), where the Supreme Court concluded that the first amendment protection of free speech as applied to a public employee was limited to matters of public concern. This limitation on speech, however, does not apply to the right of access to the courts, the central issue in this case. The right of access to the courts cannot be· characterized in terms of "public concern." Further, the factors considered in an analysis under *Connick, see McBee v. Jim Hogg County, Tex.,* 730 F.2d 1009, 1013–14 (5th Cir.1984) (en banc), are not transferable to an analysis of an infringement of the right of access to the courts. Thus, an analogy between the situation presented by this case and *Connick* must fail.

Alternatively, defendants would have the court balance the rights of the defendant with

the City's interest in settling wage disputes. The right of access to the courts cannot be infringed upon or burdened. It is as fundamental a right as any a person may hold. *See Silver v. Cormier,* 529 F.2d 161, 163 (10th Cir.1976); *Adams v. Carlson,* 488 F.2d 619, 630 (7th Cir.1973). Certainly, the right may not be limited through a balancing of interests.

**5.** Defendants contend that the Tenth Circuit has refused to follow *Silver v. Cormier,* 529 F.2d 161 (10th Cir.1976), based on the decision in *Shaw v. Neece,* 727 F.2d 947 (10th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984). This is not a correct reading of *Shaw.* The court in *Shaw* simply found that the plaintiffs had not set forth a claim under *Silver.*

**6.** The City does not enjoy such qualified immunity for an employee's action taken pursuant to municipal policy. *Monell v. Department of Social Services,* 436 U.S. 658, 690–92, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Here the City does not deny that its employees were acting

*Recoupment Provision*

■ Defendants' counterclaim is based on the recoupment provision. Defendants seek to recover money which is claimed to have been overpaid to the plaintiffs. The counterclaim was not directly addressed in the Magistrate's Report, however, the Magistrate has provided guidance which will permit the counterclaim to be disposed of here.[7] The Magistrate sets forth the factors that affect the decision to abstain and recommends that the court abstain if the issue was presented. The court accepts this recommendation and will abstain because this claim "present[s] difficult questions of state law bearing on policy problems of substantial public import," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

The arguments presented by defendants have never been directly addressed by a state court. The Magistrate notes that the cases cited by defendant are either inapposite or do not address the issue of recoupment in the context of Labor Law § 220. The state courts must be given an opportunity to resolve this dispute in the first instance. The right of recoupment should be pursued by defendants in state court.

*Damages*

■ The Magistrate found that plaintiffs are entitled to out of pocket loss as well as possible damages resulting from emotional distress. This is correct based on *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). Defendants object stating that the action is one in contract rather than tort and thus should be limited to out of pocket loss. This is not correct. While the factual setting of the action involves a contract dispute, the damages for chilling the exercise of a constitutional right is certainly not limited to out of pocket loss, regardless of the setting in which the case arises. Of course, punitive damages are not recoverable against a municipality. The Magistrate recommends that a hearing be conducted to determine the measure of damages in this case. The court adopts the Magistrate's recommendation regarding damages. This matter is hereby referred to Magistrate Buchwald to conduct whatever proceedings she deems appropriate to determine the damages in this case.

### CONCLUSION

The Magistrate's Report and Recommendation is adopted with respect to the issues of the Municipality's liability under § 1983 for infringement of plaintiffs' right of access to the courts, dismissal of the claim against defendant Linn, and the need to conduct a hearing on damages. The court departs from the Magistrate's Report and Recommendation regarding abstention from the issue of recoupment under the contract and abstains from a determination of defendants' counterclaim. This matter is hereby referred to Magistrate Buchwald for a hearing on the issue of damages.

SO ORDERED.

---

within the scope of their employment and that the employees had full authority to undertake the challenged actions. As the Magistrate noted, the actions represented the City's policy and thus the City does not enjoy immunity in this case.

**7.** Defendants contended that the Magistrate should abstain from deciding Plaintiffs' constitutional claim because it is based on the recoupment provision. The Magistrate was correct in determining that plaintiffs' claim could be resolved without resolving the controversy regarding the recoupment provision. Defendants' counterclaim, however, squarely presents the issue. Therefore, the Magistrate's recommendation that the court need not reach the abstention question is not followed.