[640 NYS2d 347]

H. Carl McCall, as Comptroller of the State of New York, et al., Respondents, v State of New York et al., Appellants, et al., Defendant. (Action No. 1.)

Edward W. Guzdek, Individually and as President of the Police Conference of New York, Inc., et al., Respondents, v State of New York, Appellant, et al., Defendant. (Action No. 2.)

Third Department, April 4, 1996

## APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Peter G. Crary, Victoria A. Graffeo* and *Peter H. Schiff* of counsel), for appellants.

*Paul, Weiss, Rifkind, Wharton & Garrison,* New York City *(Max Gitter, Gerard E. Harper, Claudia L. Hammerman* and *H. Christopher Boehning* of counsel), for H. Carl McCall and others, respondents.

*Bohl, Della Rocca & Dorfman, P. C.,* Albany *(James B. Tuttle* of counsel), for Edward W. Guzdek and others, respondents.

*Nancy E. Hoffman,* Albany *(Marilyn S. Dymond* of counsel), for Civil Service Employees Association, *amicus curiae.*

*Terri S. Blank,* New York City, for New York City Employees' Retirement System, *amicus curiae.*

*Peter Henner,* Clarksville, for Retired Public Employees Association, *amicus curiae.*

*Altman & Plaine,* Albany *(Frederick M. Altman* of counsel), for New York State Retired Teachers Association, Inc., *amicus curiae.*

*Mary Ellen Signorille,* Washington, D.C. *(Peter C. Nelson,* Rochester *[Shapiro, Rosenbaum & Liebschutz]* of counsel), for American Association of Retired Persons, *amicus curiae.*

*Janet Axelrod,* Albany, for National Education Association of New York, *amicus curiae.*

OPINION OF THE COURT

YESAWICH JR., J.

Plaintiff Comptroller is the administrator of the State and Local Employees' Retirement System and the State and Local Police and Fire Retirement System (hereinafter the retirement systems), as well as the sole trustee of the Common Retirement Fund (hereinafter CRF), which consists of "all of the assets and income" (Retirement and Social Security Law § 422 [1]) of those two systems (see, Retirement and Social Security Law § 13 [b]). Together with several retirees currently receiving benefits from the retirement systems, he commenced this suit challenging the constitutionality of portions of Laws of 1995 (ch 119).

In 1967, the Legislature enacted Retirement and Social Security Law §§ 78 and 378, which authorized the payment of supplemental retirement allowances to certain former public employees, the value of whose pension benefits had been diminished by inflation. Later amendments increased the amount of these supplemental allowances and expanded the group of retirees receiving them; the last adjustment—prior to the enactment of the legislation at issue here—was made in 1988.

The supplemental allowances were originally funded on a pay-as-you-go basis, with employers contributing annually only the amount necessary to pay the supplements for that year. In 1970, however, the Legislature authorized the Comptroller to require the advance funding of supplemental allowances (see, L 1970, ch 748), and over $70 million was thereafter collected for this purpose before the Comptroller decided to return to year-by-year funding. These funds, and their earnings—which, though collections ceased after only a few years, now total over $360 million—are referred to as the supplemental reserve fund (hereinafter SRF).

In 1990, the Legislature attempted to reduce employer contributions to the pension funds by mandating a new funding method for the CRF. When this legislation was struck down as unconstitutional (see, McDermott v Regan, 82 NY2d 354), the Comptroller established a plan for a phased-in restoration of the funds of the CRF to the level dictated by the original funding method. The plan required additional employer contributions of 1.5% of payroll, amounting to $230 million ($110 million from the State, $120 million from municipalities), in fiscal year 1995-1996. Rather than appropriate the moneys necessary to comply with the Comptroller's plan, the Legislature ultimately passed, and the Governor signed into

law, the statute in dispute, which, *inter alia*, grants the State and municipal employers a credit, to be assessed against the assets of the SRF, equal to the amount of the additional contributions they would otherwise have had to make pursuant to the Comptroller's restoration plan (*see*, L 1995, ch 119, § 13 [hereinafter section 13]). The same legislation also increases the supplemental retirement allowances paid to those retirees formerly receiving them and provides such allowances for the first time to those who retired between 1983 and 1989 (*see*, L 1995, ch 119, §§ 1-12).

In these consolidated actions, plaintiffs challenge the constitutionality of the credit provision embodied in section 13—which they contend violates the Impairment Clause of the NY Constitution (*see*, NY Const, art V, § 7)—and also that of another clause of the same legislation, which conditions the commencement date of the benefit increase on the existence, and outcome, of litigation challenging the credit mechanism (*see*, L 1995, ch 119, § 16 [hereinafter section 16]).* After plaintiffs' request for preliminary relief was denied (215 AD2d 1) and discovery was had, the parties moved for summary judgment. Supreme Court found both section 13 and section 16 unconstitutional, for the reasons advanced by plaintiffs, and rejected defendants' contention that those sections were not severable from the remainder of the statute. Directed to pay the new benefits as of September 1995, defendants appeal.

Defendants assert that because the underlying reason for the creation of the SRF was to fund a permanent program of

---

* Section 16, in relevant part, reads as follows:

"The commencement date for payment of the increase in the supplemental retirement allowance provided for in this act shall be determined as follows:

"1. in the event no action or proceeding is commenced * * * to challenge the provisions of or in relation to section thirteen of this act, the increase in the supplemental retirement allowance provided for in sections one through eleven of this act shall be payable commencing with September 1995 * * *

"2. in the event an action or proceeding is commenced * * * to challenge the provisions of section thirteen of this act and the court of final determination * * * renders a decision upholding the validity of such section thirteen the increase in the supplemental retirement allowance provided for in sections one through eleven of this act shall be payable commencing with the first month which begins at least thirty days after such decision is rendered (but no earlier than September, 1995) * * * and

"3. in the event an action or proceeding is commenced * * * to challenge the provisions of section thirteen of this act and the court of final determination * * * renders a decision which declares the provisions of section thirteen to be illegal or unconstitutional, the increase in the supplemental retirement allowance provided for in sections one through eleven of this act shall be payable commencing with the month of September 1996."

benefit increases that never materialized, and further in view of the fact that it has never been used to pay any supplemental allowances at all, the Legislature remains free to use these assets for any purpose. In addition, defendants urge that even if the SRF—which, they claim, is entirely separate from the constitutionally protected pension accumulation fund (hereinafter PAF) from which regular "fixed" pension benefits are drawn—is considered to be a source of supplemental allowances, it is nevertheless not constitutionally protected, because no supplemental allowance is awarded until after its recipient has already retired and retirees do not enjoy the protections of the Impairment Clause afforded to members of the system.

These arguments are not convincing. Regardless of whether the SRF is actually considered a separate fund, or merely a portion of the PAF, it is indisputably an asset of the retirement system, one (or a portion of one) of "the several funds" of that system. As trustee of those funds, the Comptroller is vested with the power to hold, manage and invest the assets contained therein for the benefit of the members and beneficiaries of the retirement systems, and for the protection of the taxpayers (see, Retirement and Social Security Law §§ 13, 423; Sgaglione v Levitt, 37 NY2d 507, 514). As noted in Sgaglione v Levitt (supra, at 511-512), it is implicit in the Constitution's assurance that pension benefits shall not be impaired, that the funds from which those benefits are drawn are to be protected, and that pension beneficiaries are entitled to the independent judgment of the Comptroller in managing the systems' assets, as "a safeguard integral to the scheme of maintaining the security of the sources of benefits" (supra, at 512). Since 1970, employees becoming members of the retirement system have had a right to rely on the Comptroller's independent judgment in the management of the assets comprising the SRF. Section 13 directly infringes upon this contractual right, for it intrudes upon the Comptroller's freedom to manage the funds in the manner he considers to be most fiscally appropriate. And, as McDermott v Regan (82 NY2d 354, supra) teaches, an infringement such as that occasioned by section 13 is, as Supreme Court concluded, constitutionally impermissible.

More difficult of resolution is the dilemma posed by section 16, which decrees that the increased supplemental benefits bestowed by Laws of 1995 (ch 119, §§ 1-11) be delayed in the event litigation is initiated challenging section 13. Plaintiffs contend, and Supreme Court found, inter alia, that section 16 intolerably conditions a benefit on the waiver of a constitutional right,

namely, the right to seek a judicial determination of the constitutionality of the credit provision. Defendants, on the other hand, assert that section 16 is a legitimate exercise of the Legislature's prerogative to determine when and under what conditions its legislation will take effect, and that it was eminently reasonable in this case to direct that the proposed payments not begin at the earlier date unless the offsetting credit is sanctioned.

We agree with the position taken by plaintiffs and *amici* on this point, but only, as hereinafter noted, to the extent that the payment of benefits is conditioned solely on the existence or commencement of litigation. We differ, however, insofar as the statute prescribes September 1996 as an alternate effective date if section 13 is declared unconstitutional, for we see this as simply a device whereby the Legislature has unmistakably made clear its intention with respect to how the remainder of the statute is to be treated if the credit provision is ultimately found to be illegal. Knowing that the Comptroller intended to challenge the validity of section 13, and having foreseen that it might not be upheld, the Legislature, rather than simply declare that section nonseverable from the remainder of the statute, chose instead—not inappropriately—to specify the "form this legislation would have taken" if it had, in fact, been known that the credit would be proscribed (*Matter of Westinghouse Elec. Corp. v Tully*, 63 NY2d 191, 196).

That the Legislature—if it was able to foretell the eventual outcome of this litigation—would have chosen to provide these benefits beginning in September 1996, is also borne out by the legislative history of the statute and the other record evidence of the course of negotiations leading up to its enactment. Notably, the Governor had previously vetoed a bill that provided enhanced supplemental allowances, beginning in 1995, without any credit mechanism as an "unfunded mandate", and the Assembly rejected a proposal, acceptable to the Senate and the Governor, that would have eliminated the benefits entirely should section 13 be invalidated. Moreover, though not necessarily dispositive by itself, we believe it was not unreasonable for the Legislature to condition the imposition of the additional obligation of paying these benefits in 1995 on the availability of the immediate relief that the section 13 credit would have afforded the financially beleaguered employers.

For these reasons, we conclude that this component of section 16 cannot be said to have been proven by plaintiffs to be unconstitutional beyond a reasonable doubt (*see, Hope v Pera-*

*les*, 83 NY2d 563, 574-575; *City of New York v State of New York*, 76 NY2d 479, 485); consequently, it must stand.

Defendants' contrary assertions aside, however, there is no constitutionally worthy basis for postponing payment of the supplemental benefits even if the credit provision is upheld. Such a condition does nothing more than inflict a penalty upon the retirees for exercising their right to access the courts to challenge legislation perceived to be unconstitutional (*see, McCoy v Goldin*, 598 F Supp 310, 315). Also, as Supreme Court observed, it improperly vests the party bringing suit with the power to unilaterally determine the effective date of the statute. This aspect of section 16 was therefore properly stricken.

MIKOLL, J. P., MERCURE, CREW III and PETERS, JJ., concur.

Ordered that the amended order is modified, on the law, without costs, by reversing so much thereof as declared that all of Laws of 1995 (ch 119, § 16) is invalid, and directed that the supplemental retirement allowances provided by Laws of 1995 (ch 119, §§ 1-11) were payable as of September 1995; that portion of Laws of 1995 (ch 119, § 16) conditioning the payment of benefits on the commencement or existence of litigation is declared unconstitutional, the remainder of said section is upheld and it is ordered that the supplemental allowances be paid, in accordance with the express terms of the statute as modified herein, as of September 1996; and, as so modified, affirmed.