OPINION OF THE COURT
Joseph R. Cannizzaro, J.
Plaintiffs comprise the Police Conference of New York, Inc. *760 (PCNY), Edward Guzdek, individually and as president of PCNY, and the other officers of PCNY. PCNY is a labor union representing the interests over 230 member local police organizations and their members all of whom are either full-time or retired police officers and are members of the New York State Employees’ Retirement System or the Police and Fire Retirement System (hereinafter collectively referred to as the Retirement Systems). A principal purpose of PCNY is to protect the interests of its membership in the assets of the Retirement Systems, particularly from the reach of the New York State Legislature. Guzdek is receiving and will receive future benefits from the Retirement Systems, and the other named officers will receive future benefits from the Retirement Systems.
Plaintiffs commenced this action in order to obtain a judgment pursuant to CPLR 3001 declaring chapter 411 of the Laws of 1999 of the State of New York to be invalid and unconstitutional and directing defendant H. Carl McCall, the Comptroller of the State of New York, to collect all administrative costs of the Retirement Systems for the years 1999, 2000, 2001 and 2002, from participating public employers and to pay those sums into the pension accumulation fund as required by Retirement and Social Security Law § 23 (b) (3) (b) and § 323 (b) (3) (b). Plaintiffs now move pursuant to CPLR 3212 for summary judgment in their favor.
Defendants oppose the motion and cross-move pursuant to CPLR 3001 and 3212 for judgment in their favor declaring chapter 411 of the Laws of 1999 valid and constitutional. Plaintiffs oppose defendants’ cross motion.
Facts and Background:
The Retirement Systems provide retirement, death and disability benefits to employees of the State of New York, and counties, cities, towns, villages, school districts and other governmental entities across the state. The Comptroller of the State of New York, an independent elected official, is the administrative head of the Retirement Systems who “shall adopt and may amend, from time to time, rules and regulations for the administration and transaction of the business of the [Retirement Systems] and for the custody and control of its funds.” (Retirement and Social Security Law § 11 [a]; § 311 [a].) The Comptroller is also the sole trustee of the several funds of the Retirement Systems and is charged with the fiduciary responsibility of protecting the Retirement Systems’ assets. (See Retirement and Social Security Law § 13 [b];§ 311 [b].)
*761 The largest fund of which the Comptroller is trustee is known as the Common Retirement Fund (CRF), which holds “all of the assets and income” of the Retirement Systems “except as such assets and income may be allocated or distributed to the funds of each retirement system by the comptroller.” (See Retirement and Social Security Law § 422 [1].) The CRF is funded by pension contributions from employee members of the Retirement Systems, pension contributions from the state and approximately 2,600 local government employers, and investment earnings on these contributions. Within each retirement system also exists a pension accumulation fund (PAF). Each respective PAF accumulates all of the contributions made by employers, all income received from the investments of each retirement system, and all monies received from all other sources and which are not required to be credited to any other fund. (See Retirement and Social Security Law § 23 [a]; § 323 [a].) The combined assets of the PAFs are held in the CRF.
The Retirement Systems accrue various administrative expenses or costs over the course of each fiscal year. Prior to 1999, at the end of each fiscal year the Comptroller was required under Retirement and Social Security Law § 23 (b) (3) (b) and § 323 (b) (3) (b) to obtain reimbursement of the administrative costs from participating employers. The reimbursement is called the employer’s “administration contribution” which is essentially an estimate of the administrative costs based on the previous year’s actual costs. (See Retirement and Social Security Law § 23 [b] [3]; § 323 [b] [3].) Specifically, Retirement and Social Security Law § 23 (b) (3) (b) and § 323 (b) (3) (b) provide that: “All such expenses shall be paid out of the pension accumulation fund which shall be reimbursed through administration contributions and other monies received from employers pursuant to this article.”
On August 3, 1999, the New York State Legislature passed Senate Bill S 6106/Assembly Bill A 9015, which Governor Pataki signed into law on August 9, 1999, and became chapter 411 of the Laws of 1999. Chapter 411 added an identical new clause (c) to both Retirement and Social Security Law § 23 (b) (3) and § 323 (b) (3) which states that:
“Notwithstanding any other provision of this subdivision or any other law, the administrative contribution for a year, as determined pursuant to paragraph one of subdivision b of this section, shall be paid from the pension accumulation fund if pay *762 ment from such fund will not affect the normal contribution for such year.” (See L 1999, ch 411, part E, §§ 2, 4.)
The purpose and effect of chapter 411 is to relieve the Comptroller of his statutory obligation under Retirement and Social Security Law § 23 (b) (3) (b) and § 323 (b) (3) (b) to collect the administration contributions from employers to reimburse the PAF for administrative expenses or costs paid. However, the Comptroller’s obligation is only relieved in a given year if payment from the PAF will not affect the normal contribution employers are required to make to the Retirement Systems for that year. More particularly, pursuant to Retirement and Social Security Law § 23 (b) and § 323 (b), “Each employer shall make two contributions annually. They shall be known as the normal contribution as defined in subparagraph (a) of paragraph one of this subdivision and the deficiency contribution as defined in paragraph two of this subdivision. The rates thereof shall be computed by the actuary.”
The “normal contribution” includes various costs such as administrative costs which becomes the administration contribution and is billed separately from the remainder of the normal contribution. (See Retirement and Social Security Law § 23 [b] [1] [a] [iii]; § 323 [b] [1] [a] [iii].) However, as a result of the Comptroller’s successful management of the investments funds of the CRF, the CRF’s investment earnings have in recent years offset all of the employers’ normal contributions that must be made to the PAF and therefore the CRF. In other words, the employers’ normal contribution rate has decreased to zero percent. In a fiscal year where employers are not required to make normal contributions due to the success of the CRF’s investment earnings, payment of the administrative expenses or costs from the PAF without reimbursement can occur because such payment does not affect the normal contributions employers are required to make to the Retirement Systems for that year.
To further explain, Teri Landin, the actuary for the Retirement Systems, testified that:
“Chapter 411 of the Laws of 1999 changed the way the operating expenses of the Retirement Systems are paid by permitting them to be paid from investment assets under certain specified circumstances that exist where all current and future benefits for all current members and retirees are already completely covered by the existing assets, without *763 requiring any normal cost contribution in that year.”
Landin also stated that:
“it is one of my duties to determine when the funding level of the Retirement Systems is sufficient to trigger the funding of the administrative cost without employer reimbursement pursuant to Chapter 411. In other words, I determine for the purposes of Chapter 411 whether ‘payment from such fund will not affect the normal contribution for such year.’ The only circumstance under which payment of the administrative cost from [the] CRF, without subsequent reimbursement, will not affect the normal contribution for a plan year is where the amount of money in the CRF is sufficient to result in a zero per cent [sic] normal cost contribution rate by the employer; that is, when there is no charge to the employer for the normal cost contribution in that year.”
The Comptroller explained the rationale behind chapter 411 in a letter dated February 4, 1999, sent to state and local government employers. The Comptroller stated that:
“As you know, because of the extraordinary investment performance of the Common Retirement Fund over the past few years, local governments have saved nearly half a billion dollars in retirement costs. The New York State and Local Retirement Systems has the lowest employer contribution rate of any public pension fund in the nation — 0.6 percent of payroll.
“Essentially, New York’s local governments are paying nothing to fund retirement benefits. The small percentage of payroll charged is used to cover administrative costs, group life insurance and certain options that some local governments have chosen, such as early retirement incentives.
“This year, we’re going one step further. For the first time in the Systems’ history, the State and local governments will not be charged any administrative costs for the operation of the Retirement Systems. Statutory language to implement this change is included in the Executive Budget proposal.
“It is my fiduciary responsibility, as sole trustee, to protect the interests of the Retirement Systems members and to safeguard the integrity of the pension fund. After weighing these considerations and reviewing actuarial assumptions, I determined that providing these additional savings for local governments and State taxpayers this year was the right approach. Of course, future savings will depend on the perfor *764 manee of the Fund, but I’m confident that our balanced and diversified investments will continue to produce strong growth.
“As a result of this decision, local governments in New York State will save more than $32 million in administrative costs this year alone. Coupled with the retirement benefit costs savings that will again be realized this year, local governments will enjoy the lowest charges in history. The only charges left on employer retirement bills are the costs of optional programs that some local governments have chosen to participate in.
“I understand the difficulties local governments face as demands for services increase and revenues decrease. These new savings, along with the on-going savings we’ve achieved over the last several years, will hopefully provide local governments like yours with some of the additional resources needed to meet those demands while controlling the need for tax increases.”
According to the New York State and Local Retirement Systems’ 2001 Annual Report, published by the Office of the New York State Comptroller, the actual administrative costs of the Retirement Systems were $52.6 million for 1999, $50.7 million for 2000, and $57.8 million for 2001. Landin testified that the funding level of the Retirement Systems was sufficient in 1999 and 2000 to trigger the absorption of the administrative costs under chapter 411 without subsequent reimbursement by the employers. However, in 2001, Landin stated that the funding was only sufficient to absorb the administrative costs of the Police and Fire Retirement System and not the Employees’ Retirement System. Thus, Landin stated that the Employees’ Retirement System employers received a bill in 2001 for that system’s administrative costs. To put it in perspective, Landin stated that the value of the CRF as of 1999 was $112.7 billion. Therefore, Landin stated that the computed administration contributions for employers for 1999, 2000, and 2001, had they been paid, represented approximately .05% of the value of the assets of the CRF.
Plaintiffs’ Contentions:
Plaintiffs contend that chapter 411 violates article V, § 7 of the New York State Constitution, which is known as the “Non-impairment Clause” and provides in relevant part that: “membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.”
Plaintiffs contend that allowing for administrative costs to be paid from the assets of the Retirement Systems diminishes *765 and impairs their benefits of membership in the Retirement Systems. In particular, plaintiffs contend that chapter 411 provides for the diversion of investment earnings realized on the assets of the CRF to and for the benefit of New York State public employers at the expense of the members of the Retirement Systems. Plaintiffs contend that chapter 411 is nothing more than another attempt by the Legislature to use the assets of the Retirement Systems for its own purposes or in other words, a pension raid.
Plaintiffs also contend that chapter 411 denies them their contractual right to have the CRF independently managed for their benefit by the Comptroller as the trustee of the fund because it requires him to pay administrative expenses out of the CRF’s investment earnings, where those expenses were previously borne by the employers. Lastly, plaintiffs contend that even if this is a situation that falls within the limited areas where the Legislature maintains some independent authority regarding the CRF, concomitant with that authority is a duty to act in a manner consistent with the goal of the protection of those funds as required by the Nonimpairment Clause of the State Constitution. Plaintiffs contend that the enactment of chapter 411 violates the Legislature’s fiduciary duties to plaintiffs because it diverts millions of dollars of CRF investment earnings to pay expenses which the Comptroller was previously statutorily obligated to collect from employers.
Defendants’ Contentions:
Defendants concede that the Nonimpairment Clause provides public employees such as plaintiffs with a constitutionally protected contract right to the benefits of membership in the Retirement Systems which cannot be diminished or impaired. Defendants also concede that the constitutionally protected benefits of membership in the Retirement Systems include not only the payment of pension benefits, but also the protection of the integrity of sources of the funds used to secure payment of such benefits and the protection of the Comptroller’s independent judgment in managing the assets of the CRF as trustee. Furthermore, defendants concede that the Nonimpairment Clause was specifically intended to prevent the Legislature from using funds of the Retirement Systems for budgetary purposes or interfering with the Comptroller’s independent judgment and discretion. Finally, defendants concede that the Nonimpairment Clause imposes a fiduciary duty on the state toward the members of the Retirement Systems.
With such concessions in mind, defendants contend that chapter 411 does not unconstitutionally divert assets of the *766 Retirement Systems at the expense of its members. Nor, defendants contend, does chapter 411 impair the Comptroller’s fiduciary discretion or independent judgment as trustee of the CRF. Rather, defendants contend that the enactment of chapter 411 was a proper exercise of the Legislature’s authority and the Legislature has in no way violated its own fiduciary duty to the Retirement Systems’ members.
More particularly, without chapter 411, defendants recognize that all amounts billed to employers for administrative expenses would become assets of the CRF. However, defendants contend that whether or not chapter 411 had been enacted, the benefit of such assets would inure to the employers anyway because it is the employers, not the employees, who bear the risk that the Retirement Systems’ assets and investment earnings could fall short in a given year of the actuarially determined amount needed to fund benefits, in which event, the employers’ normal contributions would have to be increased. Defendants state that the computation of the employers’ normal contribution, which is a percentage of the payroll of each employer, is based on a number of factors including the Retirement Systems’ assets, and the investment earnings on those assets. (See Retirement and Social Security Law § 11 [c] [11; §23 [b] [1] [a]; §311 [c] [1]; §323 [b] [1] [a].) Therefore, defendants state that in the absence of chapter 411, the amounts that would have been paid into the CRF to reimburse administrative costs and any investment earnings thereon would simply be applied to reduce the employers’ normal contribution in subsequent years. With the enactment of chapter 411, defendants contend that where the assets and investment earnings exceed the amounts required to fully fund member benefits in a given year, the balance simply continues to inure to the benefit of the employers through the elimination of not only normal contributions, but administration contributions as well. Defendants contend that no matter what, present and future member benefits are always fully funded and chapter 411 in no way diminishes or impairs those benefits.
Defendants also contend that there is no “diversion” of the assets of the Retirement Systems as a result of chapter 411 because the funds will only be used for purposes related to providing benefits to members in that they will be used to pay for the administrative costs of running the Systems. Defendants contend further that the use of such assets in this manner will not destabilize the CRF or create an inappropriate level of risk. Specifically, Landin stated that:
*767 “Chapter 411 has both a ‘safety trigger’ and a ‘circuit breaker’ which serve to make it operable only when it cannot destabilize [the] CRF. The administrative cost absorption mechanism does not become triggered until the Actuary has determined — using the Aggregate Cost Funding method the Comptroller considers most appropriate — that CRF investment earnings have produced funding levels in excess of the amount necessary to fully fund all current and future benefits for all current members and retirees. Similarly, in any year when the funding levels are no longer sufficient to absorb the administrative costs without changing the normal cost contribution from zero per cent [sic] (0%), the circuit breaker mechanism of Chapter 411 does not permit absorption of the administrative costs. Under those circumstances, the law continues to require that the State and participating employers make an administrative contribution to reimburse CRF for administrative expenses. Thus, Chapter 411 cannot be reasonably characterized as creating any risk whatsoever in connection with funding retirement benefits.”
Defendants also contend that chapter 411 does not infringe upon the Comptroller’s independent judgment and discretion in managing the assets of the CRF because the Comptroller never had any significant discretion with respect to the payment or employer reimbursement of the Retirement Systems’ administrative expenses. Prior to chapter 411, defendants contend that the Comptroller was required by Retirement and Social Security Law § 23 (b) (3) (b) and § 323 (b) (3) (b) to pay the administrative expenses from each system’s PAF and was required to collect from employers the reimbursement of those expenses through their administration contributions. The relevant language of these statutes state that the administrative expenses shall be paid out of the PAF which shall be reimbursed through administration contributions.
Under chapter 411, defendants contend that the Comptroller is still required to pay the administrative expenses from each system’s PAF, but is no longer required to collect from employers the reimbursement of the expenses when the normal contribution is calculated to be zero. Defendants contend that the whole process always was and remains ministerial in nature, with no less discretion being had by the Comptroller than before the enactment of chapter 411. Defendants contend that *768 the Comptroller could not, and still cannot, choose whether or not to collect administration contributions and chapter 411 does not intrude on the Comptroller’s freedom to manage the CRF in a manner he considers to be most fiscally appropriate.
Finally, defendants assert that it is well established that the Legislature has some independent authority regarding the Retirement Systems, including some flexibility to change the manner of employers’ payments — including administration contributions — into the Systems. Defendants recognize that with such authority comes a fiduciary duty to the members of the Retirement Systems similar to that of the Comptroller’s. Defendants contend that the enactment of chapter 411 did not violate the Legislature’s fiduciary duty because the statute’s cost absorption provisions come into effect only when the CRF’s assets are determined to be sufficient to fully fund basic retirement benefits without any normal contributions from employers. In addition, in contrast to prior so called “pension raids” which occurred during government budget crises, defendants contend that chapter 411 was enacted during a period of unprecedented economic growth and investment performance. Defendants contend that requiring the Retirement Systems to absorb their own administrative expenses in times of prosperity simply cannot be seen as a breach of the Legislature’s fiduciary duty. In short, defendants contend that because chapter 411 does not involve a radical change in the means chosen to maintain the integrity and security of sources from which protected benefits are paid, there is no constitutional violation. Instead, defendants contend that the Legislature acted appropriately and within the boundaries of its authority.
The Court’s Findings:
Both plaintiffs and defendants agree that the resolution of this case turns on the basic principles enunciated in three cases which similarly concerned challenges to pension legislation on grounds that the legislation infringed upon constitutionally protected benefits of the members of the Retirement Systems. (See Sgaglione v Levitt, 37 NY2d 507 [1975]; McDermott v Regan, 82 NY2d 354 [1993]; McCall v State of New York, 219 AD2d 136 [3d Dept 1996].) In applying the principles found in these three cases to the instant case, the court finds that chapter 411 is valid and constitutional.
In Sgaglione v Levitt, the Court of Appeals recognized that in regard to the Retirement Systems, the Legislature reserved the flexibility to change the manner of paying contributions, to *769 fund deficiencies in actuarial reserve, to authorize the investment of the funds, and to manage the funds. (See 37 NY2d at 512.) The Court also stated that close examination is required of any radical change in the means chosen to maintain the integrity and security of the sources from which concededly protected benefits are to be paid. (Id.) Thus, the court must first determine whether the legislative action that resulted in chapter 411 falls within one of the limited areas of flexibility reserved by the Legislature and whether such action constitutes a radical change in the means chosen to maintain the integrity and security of benefit sources.
Since chapter 411 clearly concerns a change in the manner of how administration contributions are paid, the court agrees with defendants and finds that the legislative action falls within the limits of the Legislature’s reserved authority. As to whether chapter 411 constitutes a radical change, the court notes that the Court of Appeals in Sgaglione v Levitt (supra at 512-513) found that if a legislative action interferes with the Comptroller’s freedom to exercise his independent judgment so as to “strip” him of his personal responsibility and commitment to his oath of office, then that action constitutes a radical change. In addition, in McDermott v Regan (supra at 361), the Court of Appeals found that if the legislative action impacts the CRF in such a way as to destabilize the CRF or create an inappropriate level of risk, then the action constitutes a radical change.
Here, the court again agrees with defendants and finds that chapter 411 neither interferes with the Comptroller’s independent judgment nor destabilizes the Retirement Systems or creates an inappropriate level of risk in the management of the CRF. First, prior to chapter 411, the payment and reimbursement of administration costs was clearly governed by statute and did not involve an exercise of the Comptroller’s independent judgment. (See Retirement and Social Security Law § 23 [b] [3] [b]; § 323 [b] [3] [b].) The enactment of chapter 411, which simply relieves the Comptroller of his statutory obligation to collect employers’ reimbursements of administration costs in certain circumstances, does not diminish or impair the benefit of the Comptroller’s independent judgment or somehow deprive the Comptroller of his personal responsibility to maintain the security of the sources of benefits. The legislation cannot diminish or impair what had not existed in regards to administration contributions in the first place.
Nor does a change in the manner in which administration contributions are made intrude on the Comptroller’s freedom *770 to manage the funds in the CRF in the manner which he considers most fiscally appropriate. (McCall v State of New York, supra at 140-141.) Clearly, chapter 411 presents no different of a situation than when an employer is relieved from making its normal contribution. The fact that in a given year an employer does not have to make a normal contribution equally deprives the CRF of receiving those funds, yet there is no argument that foregoing normal contributions results in the infringement of the Comptroller’s freedom to manage the CRF. Rather, it is considered a positive circumstance that the CRF has sufficient funds to fully fund basic retirement benefits in order to forego normal contributions. It is the same exact positive circumstance that is presented when administrative contributions are also not required.
Furthermore, chapter 411 only requires the Retirement Systems to absorb the costs of administration when the CRF has sufficient assets to provide for its members’ present and future retirement benefits as well as absorb those costs. Although plaintiffs claim that chapter 411 diminishes or impairs their benefits, they have failed to demonstrate how their benefits will be depleted. Nor have plaintiffs presented any evidence that demonstrates that their benefits would have been enhanced or increased but for chapter 411. In fact, there is nothing in the record which even remotely shows that the use of investment earnings to pay administration contributions when such funds are available poses any risk to the security of the sources of members’ retirement benefits. Indeed, plaintiffs have not shown that the distribution of .05% of the value of the CRF to cover the administrative costs of the Retirement Systems at times when the CRF is capable of absorbing those costs could destabilize the fund or otherwise create an inappropriate level of risk. Chapter 411, therefore, does not represent a radical change in the means chosen to maintain the integrity and security of the sources from which protected benefits are to be paid.
Even if the investments of the CRF have done well enough to absorb the Retirement Systems’ administrative costs, plaintiffs would still like the employers to pay such costs anyway because that money would obviously only increase the assets of the CRF. However, Landin has demonstrated that since the 1970s, the investment earnings of the CRF have been used to steadily decrease the rate of employers’ normal contributions for the Retirement Systems from over 30% to finally reach 0% in 1999. The court finds that chapter 411 is in *771 keeping with the Retirement Systems’ well-established longstanding goal of decreasing employers’ contributions.
Plaintiffs’ final contention, that the Legislature has violated its fiduciary duty toward the members of the Retirement Systems, is also without merit. Sgaglione, McDermott, and McCall all involved legislative enactments that were specifically intended to alleviate the state’s financial difficulties and were thus found unconstitutional. In McDermott in particular, the Court found that the Legislature breached its fiduciary duty to the members of the Retirement Systems because the only factor the Legislature considered when it chose to enact the legislation at issue was the fiscal crisis facing the state. (McDermott v Regan, supra at 362.)
In this instance, however, it is undisputed that chapter 411 was enacted to provide public employers with the benefits of the economic growth and investment performance of the CRF precisely because such benefits could be provided to employers while insuring that the retirement benefits earned by members and beneficiaries would be protected. In fact, chapter 411 cannot even be utilized unless all basic retirement benefits are fully funded. In other words, unlike the legislation at issue in Sgaglione, McDermott and McCall, it is clear that the focus of chapter 411 was and is at all times to protect the members’ interests in their retirement funds.
Moreover, in a letter written to plaintiff Guzdek from the Deputy Comptroller, John Mauhs, further explaining chapter 411, Mauhs stated that it “is the practice in most public employee pension systems, including the New York State Teacher’s Retirement Fund and the New York City systems” to offset administrative costs as well as normal contributions. Plaintiffs never disputed this fact. Thus, chapter 411 is simply permitting the Retirement Systems to do what other pension systems already do — fund their own administrative costs without depriving their members of any benefits of membership.
Enacted statutes are “entitled to a strong presumption of constitutionality, and * * * plaintiffs bear the heavy burden of establishing the contrary beyond a reasonable doubt.” (Hope v Perales, 83 NY2d 563, 574-575 [1994]; Matter of Klein [Hartnett], 78 NY2d 662, 666 [1991].)
The court finds that plaintiffs have failed to establish beyond a reasonable doubt that chapter 411 unconstitutionally diminishes or impairs the benefits of their membership in the Retirement Systems. On the other hand, defendants have demonstrated that chapter 411 does not violate article V, § 7 of the New York State Constitution.
*772 Accordingly, plaintiffs’ motion for summary judgment is denied and defendants’ cross motion for summary judgment is granted. The court hereby declares that chapter 411 of the Laws of 1999 is valid and constitutional.